



FILED

OCT - 4 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                      Case No. 09-16492-A-7
                           DC No. GMA-1

LAURA MACIEL LEON and
GUILLERMINA NAVARRO DE MACIEL

            Debtor.
_____/

FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON DEBTORS' MOTION TO CONFIRM MODIFIED PLAN

A hearing was held August 26, 2010, on the motion of the debtors to confirm their first modified plan (the "Modified Plan"). The chapter 13 trustee opposed confirmation of the Modified Plan. The court set a post-hearing briefing schedule, and the matter was deemed submitted as of September 9, 2010. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) and (L).

Background Facts.

The debtors filed their chapter 13 case on July 10, 2009. Along with the petition, they filed a chapter 13 plan. The plan was confirmed without objection, by order entered October 5, 2009.

On July 2, 2010, the debtors filed the Modified Plan.

The Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B-22") was filed with the petition. Form B-22 shows that the



1   debtors are above median debtors, but that their monthly

2   disposable income under Bankruptcy Code § 1325(b)(2) is a

3   negative number.   Therefore, they were not required in their plan

4   to make payments to unsecured creditors.   In fact, the initial

5   plan confirmed in the case shows a 0% dividend to unsecured

6   creditors.

7          The chapter 13 trustee's opposition to confirmation of the

8   Modified Plan shows the differences between the original plan and

9   the Modified Plan.   In the original plan, the creditor holding

10  the deed of trust on the debtors' home was treated in Class 1.

11  At that time, the creditor was shown as "Homecome Financial."

12  That loan is now apparently held by GMAC Mortgage, LLC ("GMAC").

13         In the original plan, the prepetition arrears to this

14  creditor were shown as $7,000, and the trustee was responsible

15  for paying the monthly contract installment of $941.58.

16         In the Modified Plan, there are no Class 1 creditors.

17         In the original plan, GMAC secured by a 2008 Chevrolet was

18  classified in Class 2 and given a monthly dividend of $836.04.

19  Snap On Credit was also treated as a Class 2 creditor with a

20  monthly dividend of $18.53.   Apparently, in the Modified Plan,

21  the GMAC claim was given accelerated payments of $985 per month.[1]

22  Snap On Credit has been deleted from the Modified Plan.

23         Both the Modified Plan and the original plan show the same

24

25         [1]The trustee's opposition to confirmation of the Modified
26  Plan shows a payment to GMAC on the car loan of $985 a month.
    The debtors did not dispute that number at the hearing.   However,
27  the copy of the Modified Plan filed with the court does not
    include the attachment describing how GMAC will be paid on the
28  car loan under the Modified Plan.

1  Class 3 creditor, City Auto, as holding collateral that is being

2  surrendered.

3      In the original plan, there are no Class 4 creditors.  In

4  the Modified Plan, GMAC is shown as a Class 4 creditor whose

5  claim will be paid directly by the debtors in the amount of

6  $797.95 a month with a maturity date of 2037.

7      The debtors state in their motion to confirm the Modified

8  Plan that the purpose of filing the Modified Plan is that the

9  debtors have entered into a loan modification agreement with GMAC

10 to reduce the amount of their monthly payments and to capitalize

11 the arrears provided for originally in the chapter 13 plan.  The

12 debtors state that GMAC required that a motion to modify the

13 chapter 13 plan to reflect the terms of the loan modification be

14 filed.  The debtors indicate that the Modified Plan reduces the

15 monthly payments to GMAC.  Originally, those payments under the

16 initial plan were a monthly contract installment of $941.58 a

17 month plus a monthly dividend of $150 per month as payment on the

18 arrearage.  After the loan modification with GMAC, the monthly

19 contract payment will be $797.95 a month.

20      Additionally, on June 4, 2010, a document entitled

21 "Stipulation Re: Loan Modification Agreement and Order Thereon"

22 (the "Loan Modification Stipulation") was filed.  Curiously, the

23 document was filed by U. S. Bank National Association as Trustee

24 for RASC 2006KS2.  Nonetheless, the Modified Plan shows the

25 affected creditor as GMAC Mortgage, LLC.  Attached as an exhibit

26 to the Loan Modification Stipulation is a document entitled

27 "Fixed Rate Loan Modification Agreement."  That agreement is

28 between the debtors and GMAC, and states that the lender is GMAC.

3

1  In any event, the debtors have entered into a loan modification

2  agreement with the holder of the first deed of trust on their

3  residence, whoever that lender may be.

4      The proof of claim for the loan was filed September 24,

5  2009, by "U. S. Bank National Association as Trustee for RASC

6  2006KS2."  This is the same entity that filed the Loan

7  Modification Stipulation.  The proof of claim also refers to GMAC

8  Mortgage, LLC, and states that the claim is secured by the

9  debtors' residence at 430 Alta Vista Street, Porterville, CA.

10  This is the same property referred to the in plan and in the

11  Fixed Rate Loan Modification Agreement.  The proof of claim filed

12  September 24, 2009, states that the amount of the secured claim

13  is $201,269.77.

14      The Fixed Rate Loan Modification Agreement states that as of

15  the effective date, the principal balance is $114,249.61.

16      Looking at the proof of claim, showing a secured claim of

17  over $200,000, and at the Fixed Rate Loan Modification Agreement,

18  showing a principal balance of $114,249.61, it appears at first

19  that the loan modification may have resulted in a significant

20  benefit to the debtors.  On the other hand, the debtors scheduled

21  the creditor as having a secured claim of $106,404 and the note

22  attached to the proof of claim shows an initial obligation of

23  $107,000.  Therefore, it would appear that the most likely

24  explanation is that the proof of claim was simply in error.

25      The maturity date of the initial obligation was January 1,

26  2036, according to the note attached to the proof of claim.  The

27  maturity date of the Fixed Rate Loan Modification Agreement is

28  the same.  Therefore, under the Fixed Rate Loan Modification

Agreement, the debtors have a lower monthly payment and the same maturity date.

The initial obligation was an adjustable rate note that began at 8.1%.  The interest rate under the Loan Modification Agreement is a fixed rate of 7%.  The debtors state in their response to the trustee's objection to confirmation of the Modified Plan that:

> "Essentially, Debtors will be required to pay the arrears once to the unsecured creditors and again to the mortgage creditor at the end of their modified mortgage, effectively doubling the cost of curing the arrears.  By requiring the plan to continue for 60 months, the Court would create a strong disincentive to future debtors seeking modification of mortgages during Chapter 13 plans.  If debtors delay modification until after the completion of the Chapter 13 plans, there is no guarantee that the current modification programs will be available.  Delaying modification efforts may result in the loss of the ability to modify, thus thwarting future debtors' fresh start."

In the initial plan, the debtors paid the trustee $2,151 per month, of which $941.58 a month was for payment of the mortgage that the debtors now propose to pay outside the plan.  The debtors propose to pay to the trustee the sum of $1,200 a month pursuant to the Modified Plan commencing July 25, 2010.  The original plan had a commitment period of 60 months, while the Modified Plan has a term of 51 months.

The Modified Plan states that the trustee has distributed $11,129.64 to GMAC Mortgage, LLC, and that the trustee will not be required to recover those funds and nor will the creditor be required to return those funds to the trustee.  Of course, a significant portion of those funds goes to the ongoing monthly payment.  To the extent that those funds were for the arrearage, neither the Modified Plan nor the Fixed Rate Loan Modification

1  Agreement state how, if at all, those payments are applied.

2  The Trustee's Opposition.

3     The trustee argues:

4     "In the present case, the only factor for modification of the Chapter 13 plan is due to the fact the debtors modified

5     their home loan.  As a result, the debtors now have disposable income on their schedule I and J.  This should be

6     used to pay the unsecured creditors in their case.  There is $19,164.00 of unsecured creditors.  If the debtors continue

7     to pay for the balance of the 60 months, the unsecured [creditors] will receive that disposable income."

8

9     The trustee points out that the Modified Plan accelerates

10 the payment on a $45,000 vehicle instead of using the funds to

11 pay unsecured creditors.  According to the trustee, the original

12 commitment period was 60 months and the Modified Plan should not

13 change that commitment period.

14    The debtors, on the other hand, argue that they are taking

15 on additional personal burden by having capitalized the arrearage

16 on their deed of trust.  Therefore, they argue they should not be

17 required to pay unsecured creditors anything and should be

18 allowed to reduce the commitment period to 51 months.

19 Applicable Law.

20    Bankruptcy Code § 1329 governs modification of a confirmed

21 plan.  It states that a confirmed plan may be modified upon the

22 request of the debtor or the trustee or the holder of an

23 unsecured claim to increase or reduce the amount of payments on

24 claims; to extend or reduce the time for such payments; or to

25 alter the amount of the distribution to a creditor.

26    The parties agree that the debtor has the burden to prove by

27 a preponderance of the evidence that the Modified Plan complies

28 with the requirements of § 1329.

1    Courts have differed about what showing must be made for a

2 chapter 13 plan to be modified.  In re Anderson addressed this

3 issue in dicta.  21 F. 3d 355 (9th Cir. 1994).  There, the Ninth

4 Circuit stated in dicta that the party seeking modification of a

5 confirmed plan "must bear the burden of showing a substantial

6 change in the debtor's ability to pay since the confirmation

7 hearing and that the prospect of the change had not already been

8 taken into account at the time of confirmation."  Id. at 358.

9    On the other hand, the Ninth Circuit Bankruptcy Appellate

10 Panel addressed the issue slightly differently in In re Powers,

11 202 B.R. 618 (9th Cir. BAP 1996).  Observing that the Anderson

12 statement quoted above was dicta, the BAP declined to hold that a

13 substantial and unanticipated change in circumstances was

14 required to modify a confirmed plan.  The BAP stated:

15         "In sum, the only limits on modification are those set forth
           in the language of the Code itself, coupled with the
16         bankruptcy judge's discretion and good judgment in reviewing
           the motion to modify. . . . Although changed circumstances
17         are not a prerequisite to modification, the court may
           properly consider them in exercise of its discretion."
18

19    The Powers view was reiterated in In re Pak, 378 B.R. 257,

     268 (9th Cir. BAP 2007).[2]
20

21    This court will exercise its discretion to consider the

22 debtors' circumstances in ruling on confirmation of the Modified

     Plan.
23

24    We will first address the length of the Modified Plan.

25 _____

26     [2]The overall holding of Pak was disapproved by the Ninth
     Circuit decision of In re Kagenveama, 541 F.3d 868(9th Cir.
27 2008).  However, now that the United States Supreme Court has
     decided Lanning, the Pak decision has renewed viability.
28 Hamilton v. Lanning, 650 U.S. ___ (2010).

1  Section 1329(b)(1) states that § § 1322(a), 1322(b), and 1323(c),

2  and the requirements of § 1325(a) apply to any modification of a

3  confirmed plan.  The requirement that an above median income

4  debtor have an applicable commitment period in its plan of not

5  less than five years is found at § 1325(b)(4).  That subsection

6  is not included in the requirements for plan modification.  In

7  this case, however, the debtors had a negative monthly disposable

8  income (See their Form B-22 at line 59).  The Ninth Circuit

9  stated in Kagenveama that the requirement of a five year

10 "applicable commitment period is inapplicable to a plan submitted

11 voluntarily by a debtor with no projected disposable income."  In

12 re Kagenveama, 541 F.3d 868, 875 (9th Cir. 2008).  While Lanning

13 disapproved Kagenveama's holding about how "projected disposable

14 income" should be calculated, it did not disturb the Ninth

15 Circuit's holding in Kagenveama that where there is no "projected

16 disposable income, there is no applicable commitment period."

17     The debtors here in their initial plan chose to, but were

18 not required to, propose a plan that extended for 60 months.

19 Now, they seek to shorten the term to 51 months.

20     The trustee asks the court to consider the 11th Circuit

21 decision of In re Tennyson, 611 F.3d 873 (11th Cir. 2010).  Terry

22 Tennyson was an above median income debtor.  However, based on

23 the Form B-22 formula, his disposable income was a negative

24 $349.30.  The 11th Circuit decided Tennyson after and in light of

25 the Supreme Court decision in Lanning.  The 11th Circuit squarely

26 disagreed with Kagenveama about the applicable commitment period

27 for above median debtors who yet have a negative disposable

28 income.  According to the 11th Circuit in Tennyson, "Section

1  1325(b)(4) clearly shows that the 'applicable commitment period'

2  shall be five years for an above median income debtor, such as

3  Tennyson.  Id. at 877.  "The plain reading of § 1325(b)(4)

4  indicates that an above median income debtor, such as Tennyson,

5  is obligated to form a bankruptcy plan with an 'applicable

6  commitment period' of no less than five years, unless his

7  unsecured debts are paid in full."  Id.

8      In other words, the 11th Circuit found compelling the

9  argument that the phrase "applicable commitment period" be read

10  as a temporal requirement for the length of a bankruptcy plan for

11  an above median income debtor, regardless of that debtor's

12  disposable income.  The Tennyson court thus disagrees completely

13  with the 9th Circuit in Kagenveama.

14      The Tennyson court concluded that its interpretation was

15  bolstered by the Supreme Court's decision in Lanning.  The 11th

16  Circuit stated:

17          "Lanning opens the door for the possibility that the final
            projected disposable income accepted by the bankruptcy court
18          may not be the result of a strict § 1325(b)(1)(B)
            calculation.  The 'applicable commitment period' must have
19          an existence independent of the § 1325(b)(1)(B) calculation.
            If 'applicable commitment period' were left dependent upon
20          projected disposable income, as Tennyson recommends, then it
            would necessarily be dependent on the multitude of
21          indeterminate factors that Lanning has allowed to be used in
            the determination of projected disposable income.  This in
22          turn would leave 'applicable commitment period' an
            indeterminate term.  In order for 'applicable commitment
23          period' to have any definite meaning, its definition must be
            that of a temporal term derived from § 1325(b)(4) and
24          independent of § 1325(b)(1)."  Id. at 878-879.

25      But, however persuasive that argument may be, we are in the

26  9th Circuit, and the portion of Kagenveama that addresses the

27  meaning of the phrase "applicable commitment period" is not

28  disturbed the Supreme Court's decision in Lanning.

9

1    Also, the statutory requirement of a 60 month commitment

2 period does not apply to a plan modified after confirmation under

3 § 1329.  The court has found no case law to the contrary.  In re

4 Tennyson does not address the question of post confirmation

5 modification.

6    On the other hand, the trustee has also objected that the

7 Modified Plan has not been filed in good faith.  Here also the

8 debtors have the burden of proof.

9    Under all the circumstances, the court is not persuaded that

10 the debtors have met their burden of proof on the issue of good

11 faith.  The Loan Modification Stipulation allows the debtors a

12 lower monthly payment on their mortgage while maintaining the

13 same maturity date.  This, then, is a net benefit for the

14 debtors.  They use this change in their circumstances as a reason

15 to modify their 60 month plan to 51 months and increase the rate

16 at which the creditor secured by their 2008 Chevrolet Tahoe is

17 paid on its $45,000 claim.  The debtors' mortgage payments under

18 the Loan Modification Stipulation are $797.95 a month.  The

19 payments proposed to the chapter 13 trustee are $1,200 a month.

20 These numbers total $1,997.95 per month.

21    Under the initial plan, the debtors made payments of $2,151

22 per month.  This is $153.05 more than they are now proposing to

23 pay.  The debtors have not explained why this amount should not

24 be used to pay unsecured creditors for the balance of the term of

25 their plan.  Under the circumstances, the court cannot conclude

26 that reducing the commitment period to 51 months; reducing the

27 payments to the chapter 13 trustee; or increasing the payments to

28 the creditor secured by the Chevrolet Tahoe, is in good faith or

10

1 warranted by or necessitated by the Loan Modification

2 Stipulation.

3     For the foregoing reasons, the motion to confirm the

4 Modified Plan will be denied.

5     The court will defer entering an order denying the motion to

6 confirm the Modified Plan to allow the chapter 13 trustee and the

7 debtors an opportunity to attempt to arrive at a consensual order

8 allowing the Modified Plan to be confirmed without further

9 hearing.

10 DATED: 10/4/10

11

12                    _____
                    WHITNEY RIMEL, Judge
                    United States Bankruptcy Court

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list.

SEE ATTACHED

DATED: October 4, 2010          By: _____
                                        Deputy Clerk

EDC 3-070 (Rev. 6/28/10)

Proof of service list for 09-16492:

Geoffrey M. Adalian, Esq.
5501 W. Hillsdale Dr., Suite C
Visalia, California 93291

Michael H. Meyer, Esq.
Chapter 13 Trustee
P. O. Box 28950
Fresno, CA 93729-8950

Office of the United States Trustee
2500 Tulare Street
Suite 1401
Fresno, California 93721